IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of MOUNTAINLAND SUPPLY COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>RAM CONSTRUCTORS, INC., and WESTERN SURETY COMPANY<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09CV915DAK |

This matter is before the court on Plaintiff Mountainland Supply Company LLC's Motion for Summary Judgment and Motion to Strike. The court held a hearing on the motion on May 19, 2011. Plaintiff was represented by Stanford P. Fitts, and Defendant was represented by Jack W. Reed. Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the law and facts relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Mountainland Supply Company LLC supplied Defendant RAM Constructors, Inc. with materials for a federal highway construction project, known as the Seven Mile-Gooseberry Road, Phase 2 Project ("Gooseberry Project"), from August 8, 2008, until approximately April 30, 2009. Mountainland has submitted documentary evidence demonstrating that the value of the materials supplied during that time period was $140,706.82.

There is no evidence that RAM has made any payment for the materials.

Because the United States is the owner of the Gooseberry Project, a bond of the contractors is required under 40 U.S.C. § 3133. Defendant Western Surety is the surety of the bond for the Gooseberry Project. Mountainland alleges that under the terms of the bond agreement, Western Surety is liable when RAM fails to pay. Western Surety has not paid on the bond despite RAM's failure to pay for the materials provided.

Mountainland has submitted an open account agreement it entered into with RAM. Under that agreement, RAM agreed to pay cash within thirty days of receipt of materials from Mountainland. RAM claims that Mountainland overbilled it $2,057.60 on some of the materials for the Gooseberry project and that it should have been given credit in the amount of $38,260.80 for materials not used on the Project. To support its statement that it was overbilled, RAM asserts that it entered into a fixed-price bid with Plaintiff. Mountainland denies that there was a fixed-price agreement and contends that the sole agreement is the open account agreement. RAM does not attach a fixed-price agreement. The only agreement between the parties in evidence, therefore, is the open account agreement.

On June 6, 2008, Mountainland provided bid prices for materials for the Gooseberry Project which specifically stated that the pricing expired on June 13, 2008. Plaintiff issued several subsequent bid prices which also expired after seven days.

RAM states that it relied on Mountainland's initial bid pricing in providing its bid amounts to the government. However, Mountainland's bid prices stated that they would expire, and RAM entered the Gooseberry Prime Contract with the government on January 14, 2008, nearly six months before Mountainland provided RAM with bid prices. Mountainland did not provide RAM with bid prices for Gooseberry until June 6, 2008.

To support its allegation that it should have been given credit for materials not used on the project, RAM asserts that it returned 240 feet of ADS pipe for a credit of approximately $13,874.40, but Mountainland refused to issue the credit. RAM also alleges that it attempted to return 1,440 feet of ADS pipe for an additional credit of $24,386.40, but Mountainland also denied credit for those materials. RAM does not provide facts to support its allegations regarding attempted returns. RAM does not identify when the materials were returned or attempted to be returned, who for Ram did the return, or who for Mountainland received or rejected the materials. Mountainland asserts that it has no record of any such material actually being returned. Mountainland also points out that there are no facts to support any obligation on the part of Mountainland to accept return of materials.

RAM takes issue with errors on Mountainland's invoices. RAM questions whether the location that the material was sent to is correct, whether the delivery date is correct, and whether the signature is of a RAM employee because many are illegible. Despite any alleged clerical issues, the invoices clearly show what materials were provided to RAM and that they were provided for the Gooseberry Project. The only requirements under the Miller Act, is that the invoice show the amount of materials that were furnished for the project. Moreover, RAM's own documents confirm approval of the invoices by RAM at the time of the project and indicate that the materials were for the Gooseberry Project. Mountainland's invoices were stamped approved by RAM and initialed by Gordon Erickson, Cory Crompton, and Dennis Nielsen of RAM.

RAM also points out that the invoices state C.O.D., which it states is inconsistent with Mountainland's argument that it has not been paid. However, only invoices re-printed from Mountainland's computer system during the course of the litigation state C.O.D. These newly

printed invoices reflect RAM's current status with Mountainland. The invoices produced by RAM, which are the invoices that were sent during the time of the project, do not state C.O.D. The controlling invoices are the ones actually sent and received by RAM, which do not state C.O.D.

Mountainland alleges that demand for payment has been repeatedly made to RAM for the $140,706.82 that is due and owing, but no payment has been made. Mountainland has also demanded payment for the amount from Western Surety and no payment has been made. Mountainland has incurred $15,682.02 in legal fees and costs in its attempt to collect the account balance. The open account agreement between Mountainland and RAM contains a provision for attorneys fees and costs incurred in attempting to collect on an outstanding balance. The open account agreement also provides for 18% per annum interest on balances more than thirty days overdue.

## DISCUSSION

### Mountainland's Motion for Summary Judgment

Mountainland seeks summary judgment against Defendants under the Miller Act, arguing that the undisputed evidence demonstrates that it provided materials to RAM for the Gooseberry Project and RAM failed to pay for those materials. It is well settled that "the purpose of the Miller Act is to provide security for those who furnish labor and material in the performance of government contracts, and a liberal construction should be given the Act to accomplish this purpose." *Fanderlik-Locke Co. v. United States*, 285 F.2d 939, 942 (10th Cir. 1960). Under the Miller Act, Mountainland is entitled to recover from Western Surety and RAM where (1) Mountainland furnished materials to RAM, (2) has not been paid for those materials, and (3) reasonably believed and intended that the materials be used on the Goosberry Project. *Fourt v.*

4

*United States*, 235 F.2d 433, 435 (10th Cir. 1956).

RAM asserts that Mountainland has failed to meet its burden and disputed issues of material fact preclude summary judgment. RAM argues that the invoices and proof of delivery documents contain inconsistencies and errors, many of the signatures are illegible, and signatures of purported recipients are either unrecognizable or not the signatures of RAM personnel.

However, Mountainland's business records, kept contemporaneously with the project and in the ordinary course of its business, establish that Mountainland provided materials to RAM for the Gooseberry Project and that RAM has not paid for these materials. RAM's own business records reflect approval of the invoices from Mountainland. These invoices have been stamped and initialed as approved by Gordon Erickson, Cory Crompton, and Dennis Nielsen of RAM. RAM's stamp also indicates that the invoice was for the Gooseberry Project. Each of Mountainland's unpaid invoices were mailed to RAM within a week of the date of each invoice. Gordon Erickson of RAM spoke regularly with Cindy Keetch, Mountainland's credit manager. Erickson never objected to or disputed any of these invoices until two years had passed and this lawsuit had been filed. RAM had every opportunity to object or dispute the invoices at the time of the project, but did not raise an objection until now.

The Miller Act only requires a showing that the materials were furnished with a good faith belief that they were used for the federal project. The Miller Act does not concern itself with where the delivery took place, if the signature is legible, or if the date on the invoice matches the actual date of the delivery. RAM does not contest the material points necessary under the Miller Act. In any event, RAM approved all of the invoices in its regular course of business.

In addition, RAM asserts that Mountainland's calculation of the amount owed is disputed

because Mountainland failed to account for overbillings and refused to accept materials RAM either returned or attempted to return for credit. RAM claims that it had a firm, fixed bid with Mountainland and the invoices do not reflect the firm, fixed price. RAM also asserts that it used Mountainland's firm bid price to enter into its contract with the government.

None of the evidence presented to the court supports RAM's theory that a firm, fixed-price bid existed. The documents in evidence demonstrate that Mountainland's bid prices were only good for approximately one week. The documents expressly give an expiration date for the listed prices. Erickson's Affidavit, which is RAM's first assertion of being overbilled, states only that he "believes" that RAM was overbilled. And, he does not rely on or produce any supporting documentation.

Moreover, RAM entered into its contract with the government months before Mountainland gave RAM a bid on materials for the Gooseberry Project. The dates do not support RAM's theory that it relied on Mountainland's bid in submitting its own bid to the government. Therefore, there is no evidence to support RAM's contention that it was overbilled.

Similarly, RAM's claim that it returned or attempted to return materials is not supported by any documents or evidence. RAM does not provide any document giving it the ability to return materials at a later date, no document in relation to the return or attempted return, no letter contemporaneous to the alleged dispute over returns, no employee testifying to being involved in such a return or attempted return, no factual details surrounding the alleged return and attempted return, and no document requesting payment or credit for the return. The lack of evidence in support of RAM's allegation cannot create a disputed fact.

Significantly, RAM does not point to anything that would obligate Mountainland to allow returns. Under the Miller Act, Mountainland is entitled to recover for excess materials that RAM

ordered. Courts have held that the Miller Act does not require proof that the material was actually used in the project. A party who orders material for a project must make payment for those materials even if it is ultimately not used. *See Fourt v. United States*, 235 F.2d 433, 435 (10th Cir. 1956) (Miller Act does not require use in project); *United States ex rel. Ardmore Concrete Material Co. v. Williams*, 240 F.2d 561, 564 (10th Cir. 1957) (Miller Act covers extra materials provided due to mistake of contractor). One court has recognized that it would be an impossible burden and would defeat the purpose of the Miller Act to require the one furnishing the materials to show that the materials were used on the project. *United States ex rel. Tom P. McDermott, Inc. v. Woods Constr. Co.*, 224 F. Supp. 406, 409 (N.D. Okla. 1963).

To the extent that RAM attempts to raise offsets from several other unrelated projects, those projects are unrelated to the Gooseberry Project and Mountainland's claim under that project. Moreover, the other projects are all closed out. RAM cannot attempt to reopen those projects to get offsets for the current project. There is also no evidence to substantiate RAM's claims regarding these unrelated projects.

The court concludes that Mountainland has met its burden under the Miller Act. The documents in evidence support its request for payment. The documents demonstrate that RAM ordered the materials from Mountainland for the Gooseberry Project, the materials were provided, and RAM did not pay for the materials. RAM's focus on place of delivery, dates, and signatures is not material to recovery under the Miller Act. Moreover, the time to take issue with those matters would have been before RAM approved the invoice. Furthermore, RAM has no document or evidence to support its contention that there was a firm, fixed-price bid, that it was overbilled, or that Mountainland was obligated to accept returned materials. Because Mountainland has met it burden under the Miller Act, the court concludes that Mountainland is

entitled to payment for the materials it furnished in the principle amount due of $140,706.82.

Mountainland also seeks interest on the principle amount due and attorneys' fees under its open account agreement with RAM. Under the Miller Act, attorneys' fees are recoverable against RAM and Western Surety where the contract between Mountainland and RAM provides for attorneys' fees. *F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116 (1974); *United States ex rel. Rent It Co. v. Aetna Casualty & Surety Co.*, 988 F.2d 88, 91 (10th Cir. 1993). The open account agreement in this case provides for interest on outstanding balances and the payment of attorneys fees incurred in collecting outstanding balances. Accordingly, Mountainland is entitled to payment of the principle amount due plus interest and attorneys' fees.

Within ten days of the date of this Order. Mountainland shall submit to the court an updated calculation for accrued interest and attorneys' fees. Mountainland's request for attorneys' fees must be detailed and supported by a declaration and billing records.

**Mountainland's Motion to Strike**

Mountainland also seeks to strike the Affidavit of Gordon Erickson submitted by RAM in opposition to Mountainland's Motion for Summary Judgment. Mountainland argues that several portions of the Affidavit contain impermissible summaries of business records and facts about which Erickson is incompetent to testify. For a summary of business records to be admissible, the party must produce the documents summarized. *United States v. Samaniego*, 187 F.3d 1222, 1223-24 (10th Cir. 1999). To the extent that the Affidavit summarizes records and does not provide the underlying documents that are summarized, those portions of the Affidavit are stricken. Statements, such as "RAM believes," can be assessed with respect to other documentary evidence and do not demonstrate that the affiant has the requisite knowledge to competently testify on the subject. Many other portions of the Affidavit, such as those regarding

other closed accounts and invoice inconsistencies, are irrelevant to the present case under the Miller Act. Accordingly, the court grants Mountainland's Motion to Strike these portions of the Affidavit.

## CONCLUSION

Based on the above reasoning, Plaintiff's Motion for Summary Judgment is GRANTED against both Defendants. Plaintiff's Motion to Strike is GRANTED. Because this ruling disposes of all the claims in this action, the Clerk of Court is directed to the close the case.

DATED this 7th day of June, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge